UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REUBEN AVENT,

                              Petitioner,                    08 Civ. 932 (VB) (LMS)

          - *against* -

                                                              **REPORT AND**
DAVID NAPOLI, Superintendent, Southport                      **RECOMMENDATION**
Correctional Facility,

                              Respondent(s).

TO:   **THE HONORABLE VINCENT L. BRICCETTI,**
      **UNITED STATES DISTRICT JUDGE**

I.      **INTRODUCTION**

        Reuben Avent ("Petitioner") seeks, by his *pro se* petition, a writ of habeas corpus

pursuant to 28 U.S.C. § 2254, from his October 23, 2001, conviction entered in New York State

County Court, Rockland County (Resnik, J.). Petition Under 28 U.S.C. § 2254 for Writ of

Habeas Corpus by a Person in State Custody (hereinafter "Petition"), Dkt. No. 1. Petitioner was

convicted, after a trial by jury, of several robbery, assault, and criminal possession of weapons

charges. The court sentenced him to concurrent, determinate terms of imprisonment ranging

from four to fifteen years. The matter was originally referred to Magistrate Judge Mark Fox on

February 4, 2008. Dkt. No. 2. It was subsequently reassigned to Magistrate Judge Paul Davison

on January 12, 2009, Dkt. No. 8, and on August 3, 2011, the matter was reassigned to me. Dkt.

No. 23. For the reasons set forth below, I respectfully recommend that the application for a writ

of habeas corpus be denied and the Petition be dismissed.

## II.     BACKGROUND

### A.     The Crime, Trial Proceedings, and Sentencing[1]

The facts related to the underlying criminal offenses are as follows. At approximately 12:45 A.M. on April 27, 2001, in the town of Spring Valley, New York,[2] Petitioner walked up to a parked automobile in which sat Richard White, Jerry Norfleet, and Nathaniel Marryshow. Petitioner placed a loaded gun under the White's chin and demanded money, jewelry, and a walkie-talkie. White complied, but Petitioner nonetheless shot him in his thigh. Petitioner then fled the scene in a waiting car, a white Toyota Camry, driven by accomplice Marlon Washington. A radio report broadcast to local law enforcement described the crime and the getaway vehicle. Around 2:00 A.M., New York State Police stopped Petitioner's vehicle as it traveled in neighboring Orange County, New York. In the course of the stop, Petitioner tossed a pistol out of the vehicle's passenger window. Officers later recovered that firearm along with the stolen property. Thereafter, Washington admitted to police that he acted as the getaway driver and that Petitioner robbed and shot the victim. Additionally, White identified Petitioner during a photographic line-up.

A grand jury subsequently indicted Petitioner on two counts of robbery in the first degree (N.Y. Penal Law § 160.15(4)), two counts of robbery in the second degree (N.Y. Penal Law

---

[1] The information from this section is taken from the trial transcript, Respondent's affidavit in opposition to the Petition, Dkt. No. 6, and Respondent's affirmation in opposition to Petitioner's state court motion to vacate the judgment of his conviction and sentence pursuant to New York Criminal Procedure Law § 440. See Resp's Affirm., Resp's Exh. 5. All exhibits cited within this Report and Recommendation are attached to the Petition, Dkt. No. 1, and Respondent's Affidavit in Opposition to the Petition. Dkt. No. 6.

[2] Spring Valley is located in Rockland County, New York, and is within the Southern District of New York.

§ 160.10(1)), two counts of robbery in the second degree (N.Y. Penal Law § 160.10(2)(a)), one count of assault in the second degree (N.Y. Penal Law § 120.05(2)), one count of criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03), and one count of criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02(4)).  Following Petitioner's arraignment, his attorney, Anthony Dellicarri, Esq., withdrew from representation. Keith Braunfotel, Esq. was subsequently appointed to represent Petitioner.

Petitioner, through counsel, moved by pretrial omnibus motion to, among other things, suppress any identification testimony by Richard White, alleging that the photographic array, from which such testimony stemmed, was unduly suggestive.  After a pretrial hearing, the County Court denied the motion.[3]  August 27, 2001, Dec. & Order, Exh. A to Resp's Affirm. in Opp. To C.P.L. § 440 Motion, Resp's Exh. 5.

On the day of jury selection, Petitioner moved to dismiss Braunfotel and proceed *pro se*. See Transcript, at 284, 356.  The court granted Petitioner's motion but directed Braunfotel to remain and act as Petitioner's legal advisor.  See id., at 356.  Immediately thereafter, Petitioner advised the court that he intended to introduce alibi evidence at trial.  Id., at 325.  The State, however, moved to preclude such evidence on the basis that Petitioner had not timely provided notice of his intent to introduce evidence of an alibi at trial.  See id., at 324.  The Court granted the State's motion, precluding the introduction of any such evidence at trial.  Id.

At trial, White identified Petitioner as the man who committed the robbery and shooting.[4]

---

[3]  The court granted Petitioner's motion insofar as it sought to sever the trial from that of Washington.

[4]  That part of the transcript containing Richard White's testimony is not included in the Court's file, but this fact is not at issue.

Norfleet similarly identified Petitioner as the culprit. See id., at 887. Norfleet attested that he recognized Petitioner at the time of the robbery, explaining that they had known each other for some time. According to Norfleet, he handed over, among other things, several hundred dollars in cash as well as a white gold necklace with a white gold cross charm to Petitioner. See id., at 894. He testified that Petitioner subsequently fled in a white Toyota Camry with tinted windows and chrome rims. Id., at 898.

Sonia Weaver testified that she was in a romantic relationship with Petitioner at the time of the robbery. Id., at 1047. She attested that Petitioner was using her white Toyota Camry, which had tinted windows and chrome rims, at the time of the robbery. Id., at 1047-48, 1054. According to Weaver, Petitioner returned the vehicle at approximately 1:05 A.M. on April 27, 2001. See id., at 1057. She added that Washington was with Petitioner when he returned the vehicle. Id., at 1059. Weaver noted that, upon returning the car, Petitioner gave her a gold necklace, which had a cross charm. Id., at 1066.

Weaver testified that she then drove Washington and Petitioner to Middletown, where they were stopped by New York State Police. Id. She testified that, during the stop, Petitioner pulled something from under his shirt and dropped it out of the automobile's passenger window. Id., at 1063-65. Police then arrested Weaver, Petitioner, and Washington on weapon and robbery charges. See id., at 1063

Officer Christopher Korba testified that he responded to the scene of Petitioner's arrest at approximately 2:00 A.M. on April 27, 2001, after receiving a radio call that other officers were in need of assistance. Id., at 1315. Korba attested that, following the arrest, he helped the other officers search for a firearm believed to have been tossed from Weaver's vehicle. According to Korba, he subsequently noticed a pistol lying on the ground approximately 10 to 15 feet away

4

from the Camry. See id., at 1320-21.

New York State Trooper Jeffrey Ulatowski stated he searched Petitioner after the arrest, finding $467.70 in cash on his person. Id., at 1348. He thereafter secured Petitioner to a wall in the patrol room of the Spring Valley police station. Id., at 1349. According to Trooper Ulatowski, he later found a white gold necklace and cross charm in the patrol room, within reaching distance of Petitioner. Id., at 1350-51.

Patricia Kerr, Petitioner's fiancee, testified that she spoke with Norfleet after the robbery. Id., at 1462-63. According to Kerr, Norfleet informed her that, although Petitioner participated in the robbery, he was not the shooter. See id., at 1463.

Marryshow testified that, immediately after the crime, he could not identify the robber to police. Id., at 1538. He explained that the culprit's face was concealed by a hat and shadow. See id. Marryshow noted, however, that the robber's voice differed from that of Petitioner. Id. Marryshow acknowledged that he also testified before the grand jury that he could not identify the miscreant. See id., at 1541. He attested, however, that he now recognized Washington as the shooter. See id., at 1542. Marryshow explained that he did not know Washington at the time of the theft but subsequently identified the thief when they crossed paths in jail. See id.

On September 14, 2001, the jury returned a verdict, finding Petitioner guilty of all counts. Id., at 1738-40. On October 23, 2001, the County Court judge sentenced Petitioner, as a second felony offender, to concurrent, determinate terms of fifteen years imprisonment on the robbery convictions, four years imprisonment on the assault conviction, fifteen years imprisonment on the conviction of second degree criminal possession of a weapon, and seven

years imprisonment for the conviction of third degree criminal possession of a weapon.[5]  Id., at

23-25.  Petitioner filed a timely notice of appeal.

### B.      Post-Trial Proceedings

James Licata, Esq. was originally appointed as Petitioner's appellate counsel.  See August

4, 2004, Report & Recommendation, at 1-2, Avent v. New York, 04 Civ. 4340, Exh. to Affid. in

Support of Writ of Error Coram Nobis, Resp's Exh. 24.  However, a conflict of interest

subsequently became apparent, and, in October 2002, the Appellate Division relieved Licata,

appointing Arleen Lewis, Esq., as Petitioner's new appellate counsel.  See Lewis Affirm. in

Opp., Resp's Exh. 25.  Shortly thereafter, Petitioner contacted Lewis to discuss his appeal, and

Lewis responded that she was reviewing the file.  See October 31, 2002, Lewis Letter, attached

to Lewis Affirm. in Opp., Resp's Exh. 25.

In January 2003, Petitioner moved to dismiss Lewis, arguing she failed to (1) maintain

sufficient communication with him about the appeal and (2) timely obtain the trial transcript.

Not. of Mot., Exh. C to Affid. in Supp. of Writ of Error Coram Nobis, Resp's Exh. 24.[6]  At

approximately the same time, Lewis asked the Clerk of Rockland County for help in locating the

transcript.  See January 22, 2003, Lewis Letter, attached to Lewis Affirm. in Opp., Resp's Exh.

25; February 12, 2003, Lewis Letter, attached to Lewis Affirm. in Opp., Resp's Exh. 25.  Lewis

wrote Petitioner in April and September 2003, stating that she had encountered numerous

---

[5] In 1993, Petitioner had pleaded guilty to a felony narcotics offense.  See Resp's
Appellate Division Brief, at 26-27, Resp's Exh. 17; see also Pet's Appellate Division Brief, at 13
(recognizing Petitioner's criminal history contained three prior felony convictions); N.Y. Penal
Law § 220.39.  The convictions which led to his second felony offender status were the result of
guilty pleas that had been entered by Petitioner.  See  Transcript, at 299, 307.

[6] It does not appear that the Appellate Division ever ruled on this motion.  See Affid. in
Supp. of Writ of Error Coram Nobis, Resp's Exh. 24, at 2-6.

difficulties in locating and obtaining the transcript, which she described as over 5,000 pages in length.[7]  See April 9, 2003, Lewis Letter, attached to Lewis Affirm. in Opp., Resp's Exh. 25; September 22, 2003, Lewis Letter, attached to Lewis Affirm. in Opp., Resp's Exh. 25. Additionally, despite Petitioner's indigence, Lewis had trouble persuading the County to provide her with a copy of the transcript free of charge.  See October 9, 2003, Lewis Letter, attached to Lewis Affirm. in Opp., Resp's Exh. 25.

      **1.**      **C.P.L. § 440 Motion to Vacate the Judgement of Conviction and Sentence**

On October 22, 2003, prior to perfection of his direct appeal, Petitioner, proceeding *pro se*, moved collaterally to vacate the judgment of conviction and sentence pursuant to New York Criminal Procedure Law (hereinafter "C.P.L.") §§ 440.20 and 440.30.  See Pet's Not. of Mot. to Vacate Judgment Pursuant to 440.30, Resp's Exh. 1.[8]  He raised the following ascertainable claims:

    (1)     the State failed to timely serve a refusal of Petitioner's demand to produce discovery pursuant to C.P.L. § 240.20 *et seq.*, see Supp. Memoranda, at 7, Resp's Exh. 2;

---

[7] These events are described in more detail in the Report and Recommendation of Magistrate Judge Fox concerning a previously filed federal petition.  See August 4, 2004, Report & Recommendation, at 3, Avent v. New York, 04 Civ. 4340, Exh. to Affid. in Supp. of Writ of Error Coram Nobis, Resp's Exh. 24; see also infra p. 11 and footnotes 10 and 11.

[8] In support of his New York Criminal Procedure Law § 440 motion, Resp's Exh. 1, Petitioner submitted a sixty-six page memorandum of law, Resp's Exh. 2, a forty-three page affidavit, Resp's Exh. 3, and a thirty page affidavit, Resp's Exh. 4.  In addition, Petitioner later submitted an eight page "Consolidation 440.30 Application" to "correct/amend minor typed errors" in his earlier submissions.  Resp's Exh. 6.  He subsequently submitted a second "consolidation under CPL 440.30," containing numerous exhibits.  Resp's Exhs. 7-8.  Finally, Petitioner submitted a reply to the States's opposition to the motion, which consisted of a five page declaration and additional exhibits.  Resp's Exh. 9.  Although Petitioner's motion cited to hundreds of exhibits, he did not submit the transcript or exhibits upon which his claims relied. See Resp's § 440 Affirm., at ¶ 16.

(2)     the indictment failed to state the elements of the crimes charged or sufficient factual details to enable Petitioner to prepare a defense, see id., at 7-9, 52-53, 61;

(3)     the bill of particulars failed to state enough factual detail to enable Petitioner to prepare a defense, see id., at 9-11;

(4)     the State violated Brady v. Maryland, 373 U.S. 83 (1963), when it failed to turn over the phone number of "Jay," a witness that could allegedly give exculpatory testimony, see id., at 11;

(5)     the State violated Brady because it failed to turn over all police reports and photographs, see id., at 17-18;

(6)     the State improperly withheld a videotape of the Spring Valley Police Department patrol room, which was Brady material because it would have shown that police actually planted the white gold chain on Petitioner, see id., at 19-20;

(7)     the State improperly failed to provide Petitioner with a copy of his or Washington's arrest photo, see id., at 20;

(8)     the State concealed the names, addresses, and prior statements of Dr. Peter Lawrence, Weaver, Marryshow, and six unknown others, who may have witnessed the robbery, treated Norfleet at the hospital, or helped Norfleet conceal incriminating information about himself, see id., at 21-24;

(9)     the State violated Brady when it did not turn over the original Sprint 911 transcripts from the Town of Wallkill, which would allegedly reveal that Petitioner was at a traffic stop in another town at the time of the robbery, see id., at 16, 30-31;

(10)    police officers falsely stated in their arrest reports, before the grand jury, at pre-trial hearings, and at trial that Petitioner was arrested at 2:45 A.M., when he was actually arrested at 12:45 A.M., see id., at 35, 38;

(11)    the State presented false ballistics evidence to the grand jury, see id., at 27, 41;

(12)    the State failed to timely disclose a felony complaint charging Weaver with certain crimes, see id., at 25, 29;

(13)    County Court improperly precluded Petitioner from presenting alibi evidence, see id., at 24-25;

8

(14)  County Court wrongly denied Petitioner's request to be present during "pre-trial inspection" of discovery and "pre-trial conferences," <u>see id.</u>, at 12-13, 18;

(15)  the following exculpatory evidence presented at trial proved Petitioner's innocence:

   (a)  the ballistics examination occurred after the date on the ballistics report, <u>see id.</u>, at 32-33;

   (b)  police made statements in newspaper articles about the results of the ballistics report before the ballistics examination was conducted, <u>see id.</u>, at 33;

   (c)  newspaper articles stated that two perpetrators robbed Norfleet, <u>see id.</u>, at 33-34; and

   (d)  various police documents discussing the proceeds of the crime made no reference to the stolen walkie-talkie, <u>see id.</u>, at 34, 43;

(16)  the State violated <u>Brady</u> because it did not disclose Marryshow's out-of-court statement that Petitioner did not commit the crime, <u>see id.</u>, at 43-44;

(17)  the State improperly coerced Marryshow into not giving testimony exculpating Petitioner by threatening to prosecute him for perjury and presenting him with evidence of Petitioner's guilt, <u>see id.</u>;

(18)  Petitioner's attorneys provided ineffective legal assistance because:

   (a)  they failed to seek discovery pursuant to C.P.L. § 240.20 <i>et seq.</i>, <u>see id.</u>, at 13-15;

   (b)  they did not object to the State's failure to produce a timely refusal of demand with regard to C.P.L. 240.20 <i>et seq.</i>, <u>see id.</u>, at 7;

   (c)  they failed to ensure his presence at the "pre-trial inspection" of discovery and "pre-trial conferences," <u>see id.</u>, at 12-13, 18;

   (d)  Dellicarri failed to:

      (1)  communicate Petitioner's desire to testify before the grand jury;

      (2)  argue that police unlawfully seized Petitioner;

9

      (2)     argue that police unlawfully seized Petitioner;

      (3)     argue that the court lacked jurisdiction, see id., at 49-51;

      (4)     disclose a conflict of interest,[9] see id., at 51;

      (e)     Braunfotel failed to disclose his conflict of interest,[10] see id., at 57-60;

(19)     the cumulative errors committed by Petitioner's attorneys forced him to proceed *pro se*, see id., at 54-56; and

(20)     the State failed to disclose Norfleet's complete criminal history or his purported cooperation agreement, see id., at 26.

Petitioner also sought relief under C.P.L. § 440.20, arguing that the County Court judge improperly sentenced him as a second felony offender. See Pet's C.P.L. § 440.30 Affid., at 2, Resp's Exh. 3. The State opposed Petitioner's motion in its entirety, arguing that C.P.L. § 440.10(2)(b) procedurally barred most of Petitioner's arguments because they could still be raised on direct appeal. See Resp's Affirm. in Opp. to C.P.L. §§ 440.10 and 440.20 Motions, at 8, Resp's Exh. 5.

On March 10, 2004, the County Court judge denied the motion. March 10, 2004, Dec. & Order, Resp's Exh. 11. Citing C.P.L. § 440.10(2)(b), the court stated that Petitioner's "claims relating to discovery, jurisdiction, the bill of particulars, Brady and Rosario violations, and prosecutorial misconduct are all matters of record, and are therefore procedurally barred." Id., at 2. The court similarly determined that Petitioner's ineffective assistance of counsel claims

---

    [9] Petitioner asserted Dellicarri had a conflict of interest because he allegedly also represented Washington. See Memoranda, Resp's Exh. 2, at 51.

    [10] Petitioner alleged that Braunfotel previously represented members of the Spring Valley Police Department, including one who had purportedly assaulted Petitioner's sister. See Memoranda, Resp's Exh. 2, at 57-60.

defendant to raise those issues on his pending appeal." Id. Finally, citing C.P.L.

§ 440.30(4)(d)(1), the court stated that Petitioner's claim regarding the legality of his sentence

was based solely on conclusory allegations. See id. On June 23, 2004, the Second Department

of the New York State Supreme Court, Appellate Division, denied Petitioner's motion for leave

to appeal the March 2004 County Court order. June 23, 2004, Dec. & Order on Application,

Resp's Exh. 14.

### 2.      Prior Petition for a Federal Writ of Habeas Corpus

On March 22, 2004, Petitioner filed a petition for a writ of habeas corpus in federal court,

seeking to compel the Appellate Division to decide his direct appeal within 60 days.[11] See

August 4, 2004, Report & Recommendation, at 1, Avent v. New York, 04 Civ. 4340, Exh. to

Affid. in Supp. of Writ of Error Coram Nobis, Resp's Exh. 24. Petitioner asserted that the

Appellate Division's delay in processing his appeal was excessive, violating his right to due

process. The petition, however, was dismissed upon the ground that Petitioner failed to allege

any prejudice caused by the delay.[12] See id.

---

[11] At some point in 2003, Petitioner filed a separate federal habeas corpus petition, seeking to vacate his 1993 conviction and arguing that he was incorrectly sentenced as a second felony offender on the basis of such conviction. That petition was dismissed for lack of subject matter jurisdiction. See Avent v. Filion, 03 Civ. 6709 (S.D.N.Y. Sept. 4, 2003). He also filed a petition in 2005, seeking an order directing the State to produce trial transcripts and arguing ineffective assistance of counsel. That petition was also dismissed. See Avent v. Rivera, No. 05 Civ. 5423 (S.D.N.Y. June 8, 2005).

[12] Despite Petitioner's previously filed applications, the instant Petition may not be dismissed as a second or successive petition pursuant to 28 U.S.C. § 2244. Petitioner's 2003 application appears to challenge his 1993 conviction, which is a different "detention of a person pursuant to a judgment of a court of the United States," than the 2001 detention which he now challenges. Id. § 2244(a). Likewise, Petitioner's 2004 and 2005 applications did not challenge the actual judgment of his 2001 conviction. Rather, they appeared to seek mandamus relief in order to speed up the direct appeal process and to procure new transcripts. To the extent that the same issues appear in the instant Petition, I note that, at the time Petitioner initially raised them

11

### 3.   Direct Appeal

In April 2004, Lewis finally obtained and read the transcript, which it turned out was approximately 2,000 pages in length.  See April 16, 2004, Lewis Letter, attached to Lewis Affirm. in Opp., Resp's Exh. 25.  After she informed Petitioner that she was in possession of the transcript, he responded that he wanted her to raise the claims he had set forth in his C.P.L. § 440 motion on direct appeal.  Lewis, however, rejected the proposal, stating that such arguments were not appropriate for appellate review because they largely contested the jury's factual findings.  See April 22, 2004, Lewis Letter, attached to Lewis Affirm. in Opp., Resp's Exh. 25. Lewis explained that she would instead focus on issues of law, noting potential arguments concerning the admission of White's identification testimony as well as contradictions between the testimony of Norfleet and Marryshow.  See id.

On May 19, 2004, Petitioner, through his appellate counsel, perfected his direct appeal to the Second Department of the New York State Supreme Court, Appellate Division.  See Petitioner's Appellate Division Brief, Resp's Exh. 15.  He argued that the County Court judge (1) improperly denied his motion to suppress White's identification testimony and (2) imposed an excessively harsh sentence, asking for a reduction in the term in the interest of justice.  See id., at 10-14.  On the issue of White's identification testimony, Petitioner contended that the photographic line-up from which such testimony originated was unduly suggestive because the array placed Petitioner's photo with those of appreciably dissimilar looking individuals.  See id.,

---

in federal court, his direct appeal was still pending.  Those claims accordingly were unexhausted at the time.  See Thai v. United States, 391 F.3d 491, 494-95 (2d Cir. 2004) (citing Ching v. United States, 298 F.3d 174, 177 (2d Cir. 2002)) (petition does not "count" for purposes of § 2244 where it was dismissed without prejudice for containing "curable procedural defects or because it presents unexhausted claims").

at 10-11.  Lewis provided Petitioner with a copy of the appellate brief.  See May 19, 2004, Lewis

Letter, attached to Lewis Affirm. in Opp., Resp's Exh. 25.

In June 2004, Petitioner again moved to dismiss Lewis, to strike her appellate brief from

the record, and to proceed *pro se*.  See Avent Ltr, Exh. D to Affid. in Supp. of Writ of Error

Coram Nobis, Resp's Exh. 24; Affid. in Supp. of Motion to Proceed *Pro Se*, Exh. to Affid. in

Supp. of Writ of Error Coram Nobis, Resp's Exh. 24.  In September 2004, while the motion was

pending, Petitioner received a copy of the transcript.  Affid. in Supp. of Writ of Error Coram

Nobis, at 6, Resp's Exh. 24.  He thereafter supplemented his motion with the assertion that the

transcript had been altered, and, therefore, he could not effectively prepare a *pro se* appellate

brief.  See Affid. in Supp. of Motion to Proceed *Pro Se*, at 5, Exh. D to Affid. in Supp. of Writ of

Error Coram Nobis, Resp's Exh. 24.

The Appellate Division denied Petitioner's motion without opinion, but it granted him

leave to file a supplemental *pro se* brief, setting a deadline of April 5, 2005.  February 22, 2005,

*Pro Se* Clerk Letter, Exh. To Affid. in Supp. of Writ of Error Coram Nobis, Resp's Exh. 24; July

9, 2004, Dec. & Order on Motion, Resp's Exh. 16.  On Petitioner's subsequent motions, the court

enlarged his time to serve and file the supplemental *pro se* brief to June 23, 2005.  May 10, 2005,

Dec. & Order on Motion, Resp's Exh. 20; February 18, 2005, Dec. & Order on Motion, Resp's

Exh. 19.  Petitioner however failed to file such a brief, and, on July 22, 2005, the Appellate

Division *sua sponte* denied his motion to file the brief.  July 22, 2005, Dec. & Order on Motion,

Resp's Exh. 21.

On May 2, 2006, the Second Department affirmed the judgment of conviction on direct

appeal.  People v. Avent, 29 A.D.3d 601 (2d Dept. 2006), Resp's Exh. 22.  The court held that

the photo array was not unduly suggestive and that the imposed sentence was not excessive.  Id.

The New York State Court of Appeals thereafter denied Petitioner's motion for leave to appeal from the Appellate Division order of affirmance on September 6, 2007.  People v. Avent, 9 N.Y.3d 892 (2007), Resp's Exh. 23.  Petitioner did not seek a writ of *certiorari* to the United States Supreme Court.  See Petition.

### 4.      Petition for a Writ of Error Coram Nobis

On or about April 20, 2007, Petitioner, proceeding *pro se*, petitioned the Appellate Division for a writ of error coram nobis.  See Writ of Error Coram Nobis, Resp's Exh. 24; Affid. in Supp. of Writ of Error Coram Nobis, Resp's Exh. 24.  Petitioner raised the following ascertainable claims:

(1)      appellate counsel unreasonably delayed perfecting his appeal, resulting in a violation of his right to a speedy appeal, see id., at 4-5;

(2)      appellate counsel provided ineffective legal assistance because she failed to communicate with Petitioner, Id., at 14;

(3)      appellate counsel failed to provide effective legal assistance because she did not read the transcript to prepare the appellate brief, and, thus, she raised frivolous arguments in the brief, see id., at 19-25;

(4)      the Appellate Division deprived Petitioner of his right to proceed *pro se* on direct appeal, see id., at 10-12; and

(5)      the Appellate Division and the State violated Petitioner's right to a fair trial by failing to timely provide him with a complete and accurate transcript.  See id., at 7, 11-17.

On September 25, 2007, the Appellate Division denied Petitioner's motion, stating that he "failed to establish that he was denied the effective assistance of appellate counsel."  People v. Avent, 43 A.D.3d 1174, 1174 (2d Dept. 2007).  On December 14, 2007, the New York State Court of Appeals denied Petitioner's motion for leave to appeal the denial of his motion.  People v. Avent, 9 N.Y.3d 1004 (2007).

14

## III. <u>The Instant Habeas Corpus Petition</u>

Petitioner timely filed the instant Petition for a writ of habeas corpus, dated December 30, 2007, in the Southern District of New York on January 28, 2008. Petitioner supports the Petition with a lengthy affirmation, which states that he raises the same claims previously brought in his C.P.L. § 440 motion to vacate the judgment of conviction, his petition for a writ of error coram nobis, and his prior federal habeas corpus petitions.[13] See Affirm. of Reuben Avent, at 2, ¶ 5[A], Petition.[14]

### A.      **The Standard of Review**

"Habeas review is an extraordinary remedy." <u>Bousley v. United States</u>, 523 U.S. 614,

_____

[13] "The [g]rounds made in [the C.P.L. § 440] motions . . . consist of the grounds Petitioner wishes to bring forth in this federal habeas petition. However[,] the facts consituted [*sic*] in those exhibits attached to this Petition shall be incorporated herein[] and are facts supporting each and every ground alleged [and/or] assertable on a federal habeas Petition as this equally applies to motions made [at] the Appellate Division and the Court of Appeals for desired constitutional relief as well as Avent's former federal habeas Petitions." Affirm. of Reuben Avent, at 2, ¶ 5[A], Petition. Petitioner did not include complete records of his prior habeas filings to support the instant Petition. Because the arguments raised in those petitions are substantially similar to those raised in his application for a writ of error coram nobis, their absence does not present an issue.

[14] In addition to submitting a copy of his C.P.L. § 440 filings – which are voluminous – Petitioner has attached a thirty-five page "Affirmation" to the Petition in which he appears to re-argue the claims previously raised in his section 440 motion. Dkt. No. 1. Petitioner has also submitted a thirty page reply memorandum and a twenty page "Reply Affirmation" that contain several exhibits. Dkt. No. 9. I note that nowhere in Petitioner's massive filings – which often contain conclusory, illegible, or simply indiscernible ramblings – has he included a succinct statement of the issues presented for review. See Rules Governing § 2254 Cases in U.S. Dist. Courts R. 2(c)-(d). I have construed liberally the entirety of Petitioner's filings relevant to the instant proceeding and have endeavored to identify the strongest arguments they suggest. See <u>Haines v. Kemer</u>, 404 U.S. 519, 520-21 (1972) (per curiam) (*pro se* allegations contained in habeas corpus petitions should be liberally construed); <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks and citation omitted) (application submitted by *pro se* petitioner should be "read liberally and should be interpreted to raise the strongest arguments that [it] suggests").

621 (1998) (citing <u>Reed v. Farley</u>, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas

corpus from a federal district court, a petitioner must fully and carefully comply with the

provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"),

28 U.S.C. § 2254.  Under AEDPA, a state prisoner must exhaust all state remedies before a

federal court may consider his or her petition for a writ of habeas corpus.  28 U.S.C.

§ 2254(b)(1)(A); <u>see also</u> <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971).  Such exhaustion is

required because, in the interests of comity and expeditious federal review, "[s]tates should have

the first opportunity to address and correct alleged violations of [a] state prisoner's federal

rights."  <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 731 (1991); <u>see also</u> <u>Daye v. Attorney Gen.</u>

<u>of the State of New York</u>, 696 F.2d 186, 190-91 (2d Cir. 1982).  The exhaustion requirement of

the federal habeas corpus statute is set forth in 28 U.S.C. § 2254:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A) the applicant has exhausted the remedies available in the courts of the
> > State; or
> >
> > (B)(i) there is an absence of available State corrective process; or
> >
> > > (ii) circumstances exist that render such process ineffective to protect
> > > the rights of the applicant. . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the
> courts of the State, within the meaning of this section, if he has the right under the
> law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)(1), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion

doctrine has been satisfied.  <u>See</u> <u>Klein v. Harris</u>, 667 F.2d 274, 282 (2d Cir. 1981).  First, the

petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate

state courts. Picard, 404 U.S. at 275-76. "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' " Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at 191). In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature." Daye, 696 F.2d at 192. The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the Due Process Clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief. Klein, 667 F.2d at 282 (internal citations omitted). A claim may be considered "presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following: (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on pertinent state cases that apply constitutional analysis in similar factual situations, (3) asserted his or her claim in terms so particular as to call to mind specific constitutionally-protected rights; or (4) alleged a fact pattern that falls within the mainstream of constitutional litigation. See Daye, 696 F.2d at 186; Irving v. Reid, 624 F. Supp. 787, 789 (S.D.N.Y. 1985).

Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. See Klein, 667 F.2d at 282. Otherwise, the claim cannot be considered exhausted. Id. A petitioner who fails to exhaust state remedies by pursuing a direct appeal may however satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction. See id.; see also Johnson v. Metz, 609 F.2d 1052, 1055-56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to proceed by filing a motion to vacate judgment

17

pursuant to C.P.L. § 440.10). If collateral relief is denied, the petitioner may satisfy the

exhaustion requirement by employing the state appellate procedures available for review of such

denial. Klein, 667 F.2d at 282-83. After a petitioner has met the threshold requirements, a

federal district court generally may hear "an application for a writ of habeas corpus on behalf of

a person in custody pursuant to the judgment of a state court" only if such custody was the result

of a "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

When a state court has decided a claim on the merits, the federal court must apply AEDPA's

deferential standard of review. See Torres v. Berbary, 340 F.3d 63, 67-68 (2d Cir. 2003). Under

AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if [it] arrives at a

conclusion opposite to that reached by [the Supreme] Court on a question of law." Williams v.

Taylor, 529 U.S. 362, 412-13 (2000). An "unreasonable application" of Supreme Court

precedent is one that "identifies the correct governing legal principle from [the Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." Id., at 413.

While "it is clear that the question is whether the state court's application of clearly established

federal law was objectively unreasonable, the precise method for distinguishing objectively

unreasonable decisions from merely erroneous ones is less clear." Torres, 340 F.3d at 68-69

18

(internal quotation marks and citations omitted); see Williams, 529 U.S. at 409. "[A]n

unreasonable application of federal law is different from an incorrect application of federal law."

Id., at 410. Therefore, to establish the objective unreasonableness of a holding, a petitioner

"must identify some increment of incorrectness beyond error." Torres, 340 F.3d at 68-69

(internal quotation marks and citations omitted). When evaluating whether a decision is "based

on an unreasonable determination of the facts in light of the evidence", 28 U.S.C. § 2254(d)(1),

the factual findings of state courts are presumed to be correct. Nelson v. Walker, 121 F.3d 828,

833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing

evidence." 28 U.S.C. § 2254(e)(1).

**B.      Discussion**

**1.      Claims Raised in Petitioner's C.P.L. § 440 Motion**

Petitioner relies on his C.P.L. § 440 motion to again raise the numerous claims stated

therein. In opposition, Respondent asserts that the County Court's rejection of Petitioner's C.P.L.

§ 440.30 claims as record-based and subject to review on direct appeal procedurally bars federal

habeas review. See Resp's Brief, at 4-13. It contends that the County Court judge's application

of C.P.L. § 440.10(2)(b) constituted an independent and adequate state ground to support the

judgment of conviction and bar federal review because the court applied it in a manner that is

"firmly established and regularly followed" in similar circumstances. Lee v. Kemna, 534 U.S.

362, 386-387 (2003). The undersigned agrees with Respondent that Petitioner's C.P.L. § 440.30

claims are procedurally barred, and therefore I recommend that they must be dismissed.

Petitioner's C.P.L. § 440.20 assertion that he was improperly sentenced as a second felony

offender may not be considered because it raises no federal constitutional argument for review in

this habeas proceeding.

a.     **Claims are Procedurally Barred**

A federal court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman, 501 U.S. at 729. For instance, federal habeas review of a federal claim is unavailable where "a state court declined to [address such claim] because the prisoner had failed to meet a state procedural requirement." Id., at 730. Such procedural bar provided the state "independent and adequate state grounds" to dismiss the petitioner's claim, and federal courts are ever mindful of the notions of "comity and federalism." Harris v. Reed, 489 U.S. 255, 260 (1989); Coleman, 501 U.S. at 730. Restated, "an adequate and independent finding of a procedural default will bar federal habeas review of the federal claim." Harris, 489 U.S. at 262. For such a circumstance to occur, "the last state court to render judgment must clearly and expressly state that its judgment rested on a state procedural bar." Jones, 126 F.3d at 415 (brackets, internal quotation marks, and citation omitted). Further, where "the last reasoned opinion on the claim explicitly imposes a procedural default, [a federal court] will presume that a later decision rejecting the claim [without opinion] did not silently disregard that bar and consider the merits." Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). However, where "the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal[]court review that might otherwise have been available." Id., at 801.

Alternatively, a petitioner may overcome such a procedural default if he or she can show a cause for the default and prejudice resulting therefrom. Coleman, 501 U.S. at 750. For instance, a petitioner may establish cause through a showing of "lack of counsel, incapacity, or some interference by officials." Id., at 744. Additionally, "[a] habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that

20

resulted in a fundamental miscarriage of justice, i.e., that he [or she] is actually innocent of the crime for which he [or she] has been convicted." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002); see Schlup v. Delo, 513 U.S. 298, 321 (1995).

C.P.L. § 440.10(2)(b) provides that a state court must deny a section 440 motion to vacate a judgment of conviction when "[t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal."  In denying that portion of Petitioner's motion to vacate the judgment pursuant to C.P.L. § 440.30, the County Court determined that his claims were sufficiently based in the trial record to permit adequate review on direct appeal. See March 10, 2004, Dec. & Order, at 2, Resp's Exh. 11. Such holding is a state procedural ground independent of the claims raised by Petitioner.[15]

Rather than challenge the independence of the state ground, Petitioner asserts that the trial court's determination does not adequately support the judgment, under the circumstances of this case, to procedurally bar his claims.  Specifically, he argues that some of the claims raised in his C.P.L. § 440 motion pertained to matters outside the record and, consequently, could not have been raised on his direct appeal.[16] See Petitioner's Reply, at 5-7.

Although a state court's dismissal of a claim on a state law procedural rule will generally

---

[15]  The Supreme Court has concluded that a state procedural rule such as C.P.L. § 440.10(2)(b), which requires a petitioner to first raise a legal issue on direct appeal, rather than on collateral review of the conviction, has a valid function.  See Reed v. Ross, 468 U.S. 1, 10-11 (1984).

[16]  Petitioner also claims that dismissals under C.P.L. § 440.10(2)(b) are only permissible after the movant has already taken his or her direct appeal.  Such argument, however, is belied by the plain language of C.P.L. § 440.10(2)(b), which states that the procedural bar is applicable when "[t]he judgment is, at the time of the motion, appealable."

bar federal review of that claim, there are circumstances "in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." Lee, 534 U.S. at 376.  The adequacy of such a state procedural bar is a federal question, Id., at 375, and, in answering such question, a federal court must determine whether "application of the procedural rule is firmly established and regularly followed in the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances." Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (internal quotation marks and citation omitted); accord Walker v. Martin, __ U.S. __, 131 S.Ct. 1120, 1127 (2011).  In evaluating whether a procedural bar is firmly established and regularly followed in the present circumstances, the court must consider:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state [case law] indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto, 331 F.3d at 240; see Lee, 534 U.S. at 376, 386-387.

C.P.L. § 440 is a vehicle for collateral attack on a conviction.  See Presier, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, C.P.L. § 440.10, at 246.  C.P.L. § 440.10(2)(b) ensures that such a collateral attack may not be used as a "substitute for direct appeal when defendant was in a position to raise an issue on appeal or could readily have raised it on appeal but failed to do so." People v. Cooks, 67 N.Y.2d 100, 103 (1986).  For instance, a petitioner may not raise a claim of ineffective assistance of trial counsel in a post-judgment motion to vacate the judgment where sufficient facts existed in the trial record to allow adequate review of the allegation on direct appeal and the petitioner unjustifiably failed to raise the issue

on direct appeal.  People v. Smith, 269 A.D.2d 769, 770 (4th Dept. 2000).

As stated before, Petitioner, acting *pro se*, raised the subject claims through a C.P.L. § 440 motion, collaterally attacking the judgment of conviction after filing his notice of, but prior to perfecting, his direct appeal.  See Pet's Not. of Mot. to Vacate Judgment Pursuant to 440.30, Resp's Exh. 1.  In denying that part of Petitioner's motion containing his C.P.L. § 440.30 claims, County Court specifically held that C.P.L. § 440.10(2)(b) barred review because the claims were adequately established in the record for review on his pending direct appeal. Therefore, C.P.L. § 440.10(2)(b) provided the court's sole basis for the denial of Petitioner's C.P.L. § 440.30 claims, and, consequently, it actually relied on such procedural violation in rendering its decision.  See Cotto, 331 F.3d at 240; Lee, 534 U.S. at 376.

Perfect compliance with C.P.L. § 440.10(2)(b) and the filing of a *pro se* supplemental brief would have permitted review of Petitioner's claims on his direct appeal.  However, Petitioner failed to file a supplemental *pro se* brief at the Appellate Division, despite being given over a year to do so.  His failure deprived the proper court of an opportunity to address his record-based claims on the merits.  Petitioner's reasoning for such failure, that a direct appeal "was not readily available and ineffective to protect his rights," is merely conclusory, and, thus, without merit.  Resp's Reply, at 18.

If the Petitioner had filed a *pro se* supplemental brief at the Appellate Division and if the court had concluded that the trial record was inadequate to permit review of the claims, it would have required reversal of the County Court's C.P.L. § 440.10(2)(b) procedural denial of such arguments and required the County Court to consider them on the merits.  Accordingly, compliance with C.P.L. § 440.10(2)(b) and the County Court's determination would have ensured a review of Petitioner's claims on the merits.

In any event, petitioner's assertion that many of the subject claims were not sufficiently supported in the record for adequate review on direct appeal is generally without merit. Most of the claims dealt with suppression issues or evidentiary rulings at trial. Additionally, Petitioner provides no evidence to support his conclusory allegations relating to the State's purported Brady violations. See Supp. Memoranda, at 17-18, Resp's Exh. 2. The County Court's application of C.P.L. § 440.10(2)(b) to deny Petitioner's claims was correct.

Turning to the second factor set out in Lee, New York courts have consistently held that, when a petitioner's direct appeal from a judgment of conviction is pending, he or she may not raise a claim in a collateral attack on that judgment if sufficient facts in the record will allow its adequate review on the direct appeal. See People v. Jossiah, 2 A.D.3d 877, 877 (2d Dept. 2003), lv denied 2 N.Y.3d 742 (2004); People v. Minter, 306 A.D.2d 801, 802 (4th Dept. 2003); People v. Watson, 284 A.D.2d 212, 213 (1st Dept. 2001), lv denied 97 N.Y.2d 643 (2001); People v. Griffin, 115 A.D.2d 902, 904 (3d Dept. 1985), lv denied 67 N.Y.2d 884 (1986).

Finally, Petitioner did not substantially comply with the rule under the circumstances. His C.P.L. § 440 motion raised myriad claims, most of them speculative in nature. Petitioner now acknowledges that at least some of those claims were sufficiently set forth in the record for adequate review on direct appeal. The County Court's denial of Petitioner's motion plainly indicated that his direct appeal was the proper vehicle by which to raise those claims. The Appellate Division gave Petitioner permission to submit a *pro se* brief in which he could have raised the issues. Despite being given over a year to submit the brief, Petitioner failed to do so, and he now gives no valid reason for such failure. Even assuming he was unable to draft the brief in that time, Petitioner could have simply submitted his original C.P.L. § 440 motion to the Appellate Division to raise the arguments stated therein.

24

In sum, the County Court applied C.P.L. § 440.10(2)(b) in a way that is "firmly established and regularly followed in the present circumstances." Because Petitioner did not take sufficient action to ensure review of the claims by the Appellate Division, the court had no fair opportunity to pass upon their merits. See Dean v. Smith, 753 F.2d 239, 241 (2d Cir.1985). Therefore, the denial of Petitioner's claims pursuant to C.P.L. § 440.10(2)(b) was a procedural default providing "an independent and adequate procedural bar to federal habeas review." Murden, 497 F.3d at 196; see Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir. 2003).

### b.    Cause and Prejudice

Petitioner alternatively argues that, even if he did procedurally default on such claims, he can show cause for the default and prejudice resulting therefrom, permitting federal review of his arguments. See Harris, 489 U.S. at 262. He contends that a state actor, specifically the Attorney General of the State of New York, directed him to bring the subject claims by C.P.L. § 440 motion, rather than on direct appeal. See Pet's Reply, at 18-19; June 25, 2003, Schwartz Letter, Pet's Reply, Exh. D13.[17] Petitioner alleges that he raised the subject arguments in a C.P.L. § 440 motion due to that letter. This argument lacks merit.

The letter to which Petitioner refers concerned his New York Civil Practice Law and Rules (hereinafter "C.P.L.R.") article 78 petition, in which he sought to compel the Rockland County District Attorney's Office to turn over certain reports and records on the grounds that they constituted Rosario and Brady material that had not been turned over at trial. See Petition,

---

[17] Petitioner also asserts that the state court judge who handled his related New York Civil Practice Law and Rules article 78 petition directed him to raise the subject claims in a C.P.L. § 440 motion. Resp's Reply, at 19. However, Petitioner fails to provide any evidence to support this allegation. Although his Reply cites to "exhibit F" to support such claim, no "exhibit F" was attached to his papers.

Pet's Reply, Exh. D12.  In commencing the proceeding, Petitioner served the Attorney General, as well as the Rockland County District Attorney's Office, with the petition.  The Attorney General subsequently informed the court that it had no interest in the proceeding because it did not represent the Rockland County District Attorney's Office.  See id.  Turning to the issue of venue, it stated: "The court of conviction is the body that can properly review such a challenge.  Petitioner's court of conviction is the Supreme Court of Rockland County.  It is there that petitioner should apply for the relief he seeks, by a [C.P.L. §] 440 motion."  Id.

In the context of his C.P.L.R. article 78 proceeding, Petitioner treated the Attorney General as an opponent in the proceeding, having served the office as a respondent.  Thus, he had no reason to rely on the statement as valid legal advice.  Such reliance does not excuse his failure to bring his claims in the appropriate venue or by the proper vehicle.  Even assuming that his reliance on the letter was valid, it was eviscerated by the County Court's denial of his C.P.L. § 440 motion as well as its statement that he should bring the claims on direct appeal at the Appellate Division.  Accordingly, the Attorney General's representation did not cause Petitioner to procedurally default on his claims.

An additional argument of cause may be found through a liberal reading of Petitioner's application for a writ of error coram nobis, in which he claimed that he was unable to prepare and submit a *pro se* supplemental brief to the Appellate Division because he never received a full and accurate transcript.  See Affid. in Supp. of Writ of Error Coram Nobis, at 7, 11-17, Resp's Exh. 24; see generally Affid. in Supp. of Mot. to Proceed *Pro Se*, at 5, Exh. D to Affid. in Supp. of Writ of Error Coram Nobis, Resp's Exh. 24.  Petitioner raised a similar issue in his most recent prior federal habeas petition, upon which he currently relies, in that he sought an order directing the production of a complete and unaltered transcript.  Pet., Exh. A; see also Avent v.

26

Rivera, No. 05 Civ. 5423 (S.D.N.Y. June 8, 2005). Petitioner claimed that his copy of the transcript had been altered in substantive ways, preventing him from drafting an appellate brief. Relying on his appellate counsel's communication in which she stated that the transcript was over 5,000 pages in length, Petitioner argued that the 1,742 page transcript with which he had been provided was clearly doctored by some unknown individual or entity. See Aff. in Supp. of Mot. to Proceed *Pro Se*, at 5, Exh. D to Affid. in Supp. of Writ of Error Coram Nobis, Resp's Exh. 24. He added that testimony vital to his appeal had been removed from the transcript. See generally id. For example, he alleged that portions of Richard White's testimony was missing, stating that "[m]ost of this witness transcript recording is either altered or false." Id., at 15-17.

The Supreme Court has held that, when a state provides appellate review of criminal convictions, it must provide an indigent defendant seeking such appellate review of his or her conviction a copy of the trial transcript or a reasonable substitute. Draper v. State of Wash., 372 U.S. 487, 488-489, 495 (1963); Griffin v. Illinois, 351 U.S. 12, 19-20 (1956). The State of New York has codified the provision of such transcripts. C.P.L. § 460.70(1).

Petitioner's ninety-six page affidavit detailing the purported alterations and omissions provides no evidentiary support for the claims, other than his own recollection of the testimony given at trial. See generally Affid. in Supp. of Mot. to Proceed *Pro Se*, Exh. D to Affid. in Supp. of Writ of Error Coram Nobis, Resp's Exh. 24. However, such allegations are self-serving and unsupported by the record because, upon examination, the transcript appears nearly complete at approximately 1,700 pages.[18]  Petitioner's reliance on his appellate counsel's letter in which she

---

[18] Pages 697-817 of the transcript, which include the testimony of Richard White, are apparently missing from the appellate file. However, Petitioner cited to such pages in his memorandum to the Appellate Division, indicating that he had a complete copy to review. See Affid. in Supp. of Mot. to Proceed *Pro Se*, at 15-18, Exh. D to Affid. in Supp. of Writ of Error

stated that the transcript amounted to over 5,000 pages is misplaced.  At the time counsel wrote

that letter, she had not yet seen the transcript, and, thus, her statement was not based on firsthand

knowledge.  See September 22, 2003, Lewis Letter, attached to Lewis Affirm. in Opp., Resp's

Exh. 25.  After obtaining and reading the transcript, Lewis described it as approximately 2,000

pages, which is in line with the approximately 1,700 pages submitted to this Court.  See April

16, 2004, Lewis Letter, attached to Lewis Affirm. in Opp., Resp's Exh. 25.  Further, in light of

his detailed memory of the trial, Petitioner does not explain how the purported transcript

alterations kept him from drafting and filing a *pro se* supplemental brief.  Petitioner's lengthy

C.P.L. § 440 motion, which he drafted prior to receiving the transcript, detailed trial testimony

and set forth numerous arguments based upon the record.  Moreover, Petitioner claims to have

sufficient memory of the trial to note ninety-six pages worth of errors in the transcript.  Because

Petitioner's argument is unsupported by the record and he gives no detailed explanation of how

the allegedly altered transcripts hindered his appeal, he fails to establish cause for procedurally

defaulting on his claims.[19]

Petitioner further avers that the Court may consider his claims because he is actually

innocent.  See Pet's Reply, at 29; Schlup v. Delo, 513 U.S. 298 (1995).  However, he does not

put forth any evidence of actual innocence, instead citing the supposed trial and appellate errors

as proof of his innocence.

In sum, Petitioner's claims originating in his C.P.L. § 440 motion are either procedurally

barred or do not raise federal legal issues for review.  Accordingly, the Court may not address

---

Coram Nobis, Resp's Exh. 24

[19]  Because Petitioner fails to show cause for defaulting on the claims originally raised in
his C.P.L. § 440 motion, this Court need not address whether he was prejudiced by the default.

their merits.

**2. Claims Raised in the Petition for a Writ of Error Coram Nobis**

Petitioner reasserts the claims previously raised in his petition for a writ of error coram nobis, some of which he also raised in his prior federal habeas corpus applications. See generally Affid. in Support of Writ of Error Coram Nobis, Resp's Exh. 24; Avent v. New York, 04 Civ. 4340 (S.D.N.Y. Sept. 27, 2004); Petition, Exh. A; Avent v. Rivera, No. 05 Civ. 5423 (S.D.N.Y. June 8, 2005). Specifically, Petitioner alleges that his appellate counsel provided him with ineffective legal assistance on his direct appeal because she (1) unreasonably delayed perfecting his appeal, see Affid. in Support of Writ of Error Coram Nobis, at 4-5, Resp's Exh. 24; (2) failed to communicate with him, see id., at 14; and (3) failed to read the transcript and, as a result, raised deficient arguments on appeal. See id., at 19-25; Pet's Reply, at 28.[20] Petitioner placed all such arguments in the context of his Sixth Amendment right to counsel and his Fourteenth Amendment right to due process.

"In New York, coram nobis is the appropriate remedy for ineffective assistance of appellate counsel." Sweet v. Bennett, 353 F.3d 135, 141 n. 7 (2d Cir. 2003). It is similarly appropriate for a violation of the right to speedy appeal. Cf. Brooks v. Jones, 875 F.2d 30, 31 (2d Cir. 1989). The Appellate Division previously determined Petitioner's claims to be without merit, stating that he "failed to establish that he was denied the effective assistance of appellate counsel." People v. Avent, 43 A.D.3d 1174, 1174 (2d Dept. 2007). Thereafter, the New York State Court of Appeals denied Petitioner's motion for leave to appeal the denial of his motion.

---

[20] Petitioner also alleges that the Appellate Division improperly denied him his constitutional right to self-representation on appeal. Affid. in Support of Writ of Error Coram Nobis, at 10-12, Resp's Exh. 24. However, the Supreme Court has held that no such right exists. Martinez v. Court of Appeal of Cal., 528 U.S. 152, 161, 163 (2000).

29

People v. Avent, 9 N.Y.3d 1004 (2007).  Therefore, Petitioner's claims are exhausted, and they are not procedurally barred.  Respondent argues that the Appellate Division, in denying Petitioner's application, reasonably applied established federal law.  See Resp's Memorandum of Law, at 13.

### a. Speedy Appeal

Petitioner first contends, in the context of an ineffective assistance of counsel argument, that his appointed counsel's delay in perfecting the direct appeal violated his due process right to a speedy appeal.  This argument lacks merit.

When a state provides criminal defendants an avenue for appeal of criminal convictions, those appeals must accord with due process.  Evitts v. Lucey, 469 U.S. 387, 393 (1985).  Due process requires that such appeals be heard promptly.  Mathis v. Hood, 937 F.2d 790, 794 (2d Cir. 1991); Simmons v. Reynolds, 898 F.2d 865, 868 (2d Cir. 1990).  When evaluating whether a delay in appellate review violated a petitioner's right to due process, a court should look to the (1) length of the delay, (2) reason for the delay, (3) petitioner's assertion of his or her right to a speedy appeal, and (4) prejudice resulting from the delay.  See Barker v. Wingo, 407 U.S. 514, 530-532 (1972); Simmons, 898 F.2d at 869; Brooks v. Jones, 875 F.2d 30, 31 (2d Cir. 1989).

Petitioner's appellate counsel perfected his appeal two and one-half years after the conviction, and the Appellate Division affirmed the conviction the following year – a time frame well short of the periods that the Second Circuit has generally found excessive.  See Simmons, 898 F.2d at 868 (six-year delay "clearly excessive"); Elcock v. Henderson, 28 F.3d 276, 279 (2d Cir. 1994) (eight-year delay was excessive), cert denied, 513 U.S. 977 (1994); Mathis, 937 F.2d at 794 (six-year delay in determining appeal violated due process).  Additionally, the delay was attributable mainly to counsel's difficulties in securing a copy of the transcript.  Counsel's

correspondence with Petitioner shows she did not neglect the case and made regular efforts to obtain the transcript. Despite such difficulties, Petitioner pressed for a speedy appeal, seeking federal habeas relief to compel the Appellate Division to consider his appeal. Ironically, Petitioner himself later prolonged consideration of the appeal by more than a year through his delays in filing a *pro se* supplemental brief – a brief that he never filed.

Petitioner alleges that the delay in his appeal resulted in the erosion of exculpatory evidence and permitted police to destroy trial exhibits. Affid. in Support of Writ of Error Coram Nobis, at 4, Resp's Exh. 24. However, he fails to support such allegations with any specificity or evidence. Consequently, even assuming that the delay in perfecting or deciding his appeal violated due process, Petitioner is not entitled to habeas relief on the claim because he does not assert that "the appeal would have had a different result absent the delay." Diaz v. Henderson, 905 F.2d 652, 653 (2d Cir. 1990); see Simmons, 898 F.2d at 868; Elcock, 28 F.3d at 279; Mathis, 937 F.2d at 794.

### b. Ineffective Assistance of Appellate Counsel

A claim of ineffective assistance of appellate counsel demands the same Strickland analysis as that used for trial counsel. See e.g. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); Claudio v. Scully, 982 F.2d 798, 803 (2d Cir.1992), cert denied, 508 U.S. 912 (1993). In other words, a petitioner must show that appellate counsel's performance "fell below an objective standard of reasonableness" and that there is a "reasonable probability" that, but for counsel's error, the outcome would have been different. Strickland, 466 U.S. at 686-88; accord Williams v. Taylor, 529 U.S. 362, 363 (2000).

To meet his or her burden on the first prong, a petitioner must establish that the attorney's performance was deficient. However, a "fair assessment of attorney performance requires that

every effort be made to eliminate the distorting effects of hindsight." <u>Rompilla v. Beard</u>, 545 U.S. 374, 408 (2005) (internal quotation marks and citation omitted). "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and[, therefore,] 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " <u>Greiner v. Wells</u>, 417 F.3d 305, 319 (2d Cir. 2005) (quoting <u>Strickland</u>, 466 U.S. at 690), <u>cert</u> <u>denied</u>, 546 U.S. 1184 (2006). Further, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." <u>Strickland</u>, 466 U.S. at 690.

No evidence in the record supports Petitioner's claim that appellate counsel failed to communicate with him. As stated supra, Lewis regularly corresponded with Petitioner from her appointment in October 2002 through the filing of the appellate brief in May 2004. For most of that period, Lewis worked diligently to get a copy of the transcript in order to prepare the appellate brief. After obtaining and reading the transcript, Lewis and Petitioner discussed his proposed arguments as well as the claims she found strongest. <u>See</u> April 22, 2004, Lewis Letter, attached to Lewis Affirm. in Opp., Resp's Exh. 25. Therefore, Petitioner's assertion is unsupported by the record. Moreover, Petitioner fails to make any showing of prejudice resulting from the purported lack of communication.

Turning to Petitioner's final contention, "decisions concerning which legal issues will be urged on appeal are uniquely within the lawyer's skill and competence, and their resolution is ultimately left to his [or her] judgment." <u>Ennis v. LeFevre</u>, 560 F.2d 1072, 1075 (2d Cir. 1977), <u>cert</u> <u>denied</u> 435 U.S. 976 (1978). Thus, an attorney need not raise every meritorious claim, "but rather may select from among them in order to maximize the likelihood of success on appeal." <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2003) (citation omitted); <u>see</u> <u>Mayo</u>, 13 F.3d at 533. The

32

Supreme Court has accordingly determined that indigent defendants do not have a "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present these points." Jones v. Barnes, 463 U.S. 745, 751 (1983). However, where "counsel failed to press an argument that had obvious merit," then he or she may have provided ineffective legal assistance. Ennis, 560 F.2d at 1076; see Mayo, 13 F.3d at 533; United States ex rel. Maselli v. Reincke, 383 F.2d2d 129, 132-135 (2d Cir. 1967).

Petitioner's appellate counsel challenged the admission of Richard White's identification testimony and requested a discretionary reduction in the sentence. See Pet's Appellate Division Brief, at 10-14, Resp's Exh. 15. Contrary to Petitioner's claim, his counsel grounded the claims in the trial record and supporting case law, evidencing that she thoroughly examined the transcript and researched the issues. Despite criticizing counsel's choice of issues to raise on appeal, Petitioner points to no specific issue that she should have instead raised. At most, it can be said that he would have preferred her to raise the approximately twenty-seven claims included in his C.P.L. § 440 motion. However, counsel had no duty to raise every nonfrivolous argument. Jones, 463 U.S. at 754. Therefore, while the arguments she did raise may appear weak in hindsight, such missteps were merely "tactical errors or mistakes in strategy, and for these [the Court] can grant no relief." United States v. Garguillo, 324 F.2d 795, 797 (2d Cir. 1963); See Strickland, 466 U.S. at 690. Therefore, the Appellate Division's conclusion that counsel's legal assistance did not fall below the accepted the accepted level of competence required by the constitution was not "contrary to" or an "unreasonable application of" federal law. 28 U.S.C. § 2254(d).

## IV.   **CONCLUSION**

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that the application for a writ of habeas corpus be denied and the Petition be dismissed.  As the Petition presents no questions of substance for review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue.  Rodriguez v. Scully, 905 F.2d 24 (2d Cir. 1990) (per curiam); Alexander v. Harris, 595 F.2d 87, 90-91 (2d Cir. 1979).  I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. § 1915(a) that an appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962).

## **NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Vincent L. Briccetti at the Hon. Charles L. Brieant Jr. Federal Building and Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the Chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Briccetti, and should not be made to the undersigned.

Dated: February 7, 2013
       White Plains, NY

                                        Respectfully submitted,

                                        Lisa Margaret Smith
                                        United States Magistrate Judge
                                        Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

Honorable Vincent L. Briccetti, U.S.D.J.

Reuben Avent
#01-A-5796
Great Meadows Correctional Facility
11739 State Route 22
PO Box 51
Comstock, NY 12821-0051


Carrie Anne Ciganek
Assistant District Attorney, Rockland County
County Office Building
1 S Main St., Suite 500
New City, NY 10956